The Law Office Of John F. Olsen, LLC
John F. Olsen #005551992
33 Plymouth Street, Suite 108
Montclair, New Jersey 07042
t. (973) 679-4001
f. (973) 679-7335

*Attorneys for Plaintiff Michele Stirone*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE STIRONE,<br><br>　　　　Plaintiff,<br><br>　　　-vs-<br><br>MAD EVENT MANAGEMENT, LLC, MARTHA DONATO and MARTIN GLYNN,<br><br>　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff Michele Stirone, for her complaint against defendants MAD Event Management, LLC, Martha Donato and Martin Glynn, alleges as follows:

1. Plaintiff brings this lawsuit seeking recovery against defendants for defendants' overtime and other wage violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York law, including N.Y. Lab. Law §§ 190 et seq. and 650 et seq. and 12 N.Y.C.C.R. § 142-2.2.

2. Plaintiff also brings this lawsuit for breach of contract, unjust enrichment, theft of trade secrets and other common law claims.

3. This Court has subject matter jurisdiction over plaintiff's FLSA claims pursuant to 28 U.S.C. §§1331 and 29 U.S.C. §216(b).

4. This Court has subject matter jurisdiction over plaintiff's New York and common law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and defendant MAD Events has an office in New Jersey and is resident here for venue purposes under 28 U.S.C. § 1391(c)(2).

6. Plaintiff is a citizen of New Jersey and a resident of Bergen County, New Jersey.

7. Defendant Martha Donato is an individual residing, upon information and belief, in Orange County, New York.

8. Defendant Martin Glynn is an individual residing, upon information and belief, in Orange County, New York.

9. Upon information and belief, defendant MAD Event, LLC ("MAD Event") is a company organized under the laws of New York.

10. MAD Event does business in New Jersey and throughout the country marketing, organizing and operating consumer and trade events and conferences, such as Comic Cons and Comic Expos and Cheerleader Competitions and Events. MAD Event has an office in Paramus, New Jersey.

11. At all relevant times, defendant Donato was defendant MAD Event's President.

12. At all relevant times, defendant Glynn was defendant MAD Event's Chief Executive Officer.

13. At all relevant times, plaintiff Stirone operated and coached an all-star cheerleading team based in North Arlington, New Jersey. With her team, the NA Starz,

plaintiff Stirone travelled to cheerleading competitions and events throughout the Northeast.

14. In 2013, plaintiff Stirone started a company, Ultimate Cheer and Dance ("Ultimate"), to promote and operate cheerleading and dance competitions.

15. During this time frame, plaintiff Stirone was employed full time as an accounting and bookkeeping clerk at B.F. Lanagan and her efforts with the NA Starz and Ultimate were done after hours, on weekends and while she was on vacation.

16. Plaintiff Stirone first met with defendant Donato and defendant Glynn in August 2014. The purpose of the meeting was to discuss the creation of a business relationship between MAD Event and Ultimate. After the initial meeting, the parties decided to work together and develop a business focused on promoting and operating cheerleading competitions in the New York metropolitan area.

17. In September 2014, at the request of defendants Donato and Glynn, plaintiff Stirone developed a business plan for a joint venture or partnership between MAD Event and Ultimate Cheer and Dance. Together, the two companies would promote, operate and host cheerleading competition events in New Jersey and New York. Plaintiff prepared the plan and defendant Donato revised and finalized the plan and distributed it to interested parties.

18. At defendants' request, plaintiff Stirone went to work immediately, she redesigned Ultimate's logo and developed a website for the companies' combined efforts.

19. While developing the business, plaintiff Stirone shared her substantial

creative talents and disclosed her extensive knowledge of the cheer and dance community with defendants and she also invested hours upon hours of her free time to the enterprise.

20. By December 2014, the parties identified the New Jersey Expo Center in Edison, New Jersey and the Jacob Javits Center in New York as two ideal locations to host their events. Defendants had experience with both venues.

21. In January 2015, plaintiff Stirone and a video crew run by defendant Glynn developed a cheer video featuring plaintiff Stirone's NA Starz cheerleading team. The video was uploaded to the Ultimate website.

22. In January 2015, Ultimate and MAD Event met with GK Elite, the leading apparel company in the gymnastics and cheerleading worlds. The purpose of the meeting was to obtain sponsorship from GK Elite for an event at the New Jersey Expo Center. The parties also discussed sponsorship conversations had with Anastasia "Nastia" Liukin, an Olympic gold-medal gymnast and spokesperson for GK Elite.

23. In March 2015, in conjunction with GK Elite and Ms. Liukin, Ultimate and MAD Event organized and promoted a cheerleading camp at the New Jersey Expo Center.

24. In April 2015, at defendants' request, plaintiff Stirone invested $6,000 with defendants MAD Event, Donato and Glynn to help fund the joint operations of the two companies.

25. In April and May 2015, plaintiff Stirone worked with MAD Event to organize and promote three different events in the spring and summer of 2015 that included one

cheerleading camp and two competitions.

26. In or around March 2015, at defendants' request, plaintiff Stirone began working at MAD Event. Plaintiff Stirone became MAD Event's bookkeeping and accounting clerk. Although plaintiff Stirone continued working at her other job fulltime, she devoted 20 to 30 hours per week to her responsibilities at MAD Event. Plaintiff Stirone was not paid for her work on behalf of MAD Events during this time.

27. In June 2015, at defendants' request, plaintiff Stirone had a lawyer develop an operating/partnership agreement between the parties. At around the same time, the parties began searching for commercial space suitable for the operation of a cheerleading and dance gym.

28. In July and August of 2015, defendant Donato asked plaintiff Stirone to come to work for MAD Event as a full time employee to act as a Controller and Event Manager. At defendant Donato's urging, in October 2015, plaintiff Stirone resigned from her job at B.F. Lanagan and became a full-time MAD Event employee working on event promotion and organization and continuing her job as bookkeeping and accounting clerk. Plaintiff Stirone worked at MAD Event's office in Warwick, New York.

29. Ms. Stirone left her job with B.F. Lanagan only because defendants assured her that Ultimate Cheer and MAD Event would have a long and thriving business arrangement together.

30. During her time working as an employee of MAD Event, plaintiff Stirone routinely worked in excess of 60 hours per week. Plaintiff Stirone was in the office working from 8:30 a.m. to 6:00 p.m. every weekday and worked another 2 hours from

home each weeknight. On the weekends, plaintiff Stirone worked six hours.

32. During the spring and summer of 2015, Ultimate and MAD Event were planning a cheerleading event at the Javits Center in New York. In September 2015, Ms. Liukin joined the parties' efforts as spokesperson for the New York City competition and the event was renamed the Shine Tour, which was the name Ms. Liukin used to promote events. Ms. Liukin's involvement ended abruptly in November 2015 and the event was billed as an Ultimate Cheer event, rather than a Shine Tour event.

32. By December 2015, plaintiff Stirone was spending all of her time working on the Javits Center event. The event occurred on December 19, 2015 and was a resounding success.

33. Once the event was over, plaintiff was tasked with upgrading and modernizing MAD Events bookkeeping processes and migrating accounts payable and receivable into QuickBooks.

34. In January 2016, Varsity, one of the biggest cheer competition organizers, reached out to defendant Glynn, to discuss taking over Ultimate's event at the Javits Center in the future.

35. On February 4, 2016, defendants terminated plaintiff Stirone's employment with MAD Event without notice and without cause.

36. Defendants did not return plaintiff Stirone's $6,000 investment, did not share the profits of the events with her, continued to operate as Ultimate for a period of many months and refused to allow plaintiff Stirone to regain control of the website she developed for Ultimate before joining forces with defendants.

37. At all relevant times, defendant MAD Event was an employer within the meaning of the FLSA, 29 U.S.C. § 203 and N.Y. Lab. Law §§ 2(6), 190(3) and 651(6).

38. At all relevant times, defendant Donato was an employer within the meaning of the FLSA, 29 U.S.C. § 203 and N.Y. Lab. Law §§ 2(6), 190(3) and 651(6).

39. At all relevant times, defendant Glynn was an employer within the meaning of the FLSA, 29 U.S.C. § 203 and N.Y. Lab. Law §§ 2(6), 190(3) and 651(6).

40. At all relevant times to this action, defendants were regularly engaged in interstate commerce and plaintiff Stirone regularly performed tasks involving interstate commerce.

41. At all relevant times, plaintiff Stirone was an employee of defendants within the meaning of FLSA, 29 U.S.C. § 203 and N.Y. Lab. Law §§ 2(5), 190(2) and 651(5).

**FIRST CLAIM FOR RELIEF – FEDERAL MINIMUM WAGE**

42. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 41 of this complaint as if fully set forth herein.

43. Under 29 U.S.C. § 206, defendants were required to pay plaintiff Stirone a minimum wage for all of the hours she worked on behalf of MAD Event.

44. From the period between March 1, 2015 and September 30, 2015, defendants failed to pay plaintiff Stirone any wages at all.

45. Defendants' failure to pay plaintiff Stirone minimum wage was willful within the meaning of 29 U.S.C. § 255(a).

46. Plaintiff Stirone is entitled to recover from defendants her unpaid minimum wages and an equal amount in the form of liquidated damages.

## SECOND CLAIM FOR RELIEF – FEDERAL OVERTIME VIOLATIONS

47. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 46 of this complaint as if fully set forth herein.

48. While she was working as an employee of MAD Event, plaintiff Stirone regularly worked in excess of 60 hours per week.

49. Defendants did not pay plaintiff Stirone an overtime premium for each hour she worked over 40 hours per week in violation of 29 U.S.C. § 207(a)(1).

50. Defendants' failure to pay overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

51. Plaintiff Stirone is entitled to recover from defendants her unpaid overtime compensation and an equal amount in the form of liquidated damages.

## THIRD CLAIM FOR RELIEF – NEW YORK STATE MINIMUM WAGE VIOLATIONS

52. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this complaint as if fully set forth herein.

53. Under N.Y. Labor Law §§ 190 et seq., 652 and 12 N.Y.C.R.R. § 137-1.2, defendant MAD Event was required to pay plaintiff Stirone a minimum wage for all of the hours she worked.

54. From the period between March 1, 2015 and September 30, 2015, defendants failed to pay plaintiff Stirone any wages at all.

55. Defendants' failure to pay plaintiff Stirone minimum wage was willful within the meaning of N.Y. Lab. Law §§ 663(1) and 198(1-a).

56. Plaintiff Stirone is entitled to recover from defendants her unpaid minimum wages and an equal amount in the form of liquidated damages.

**FOURTH CLAIM FOR RELIEF – NEW YORK STATE OVERTIME VIOLATIONS**

57. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 56 of this complaint as if fully set forth herein.

58. While she was working as an employee of MAD Event, plaintiff Stirone regularly worked in excess of 60 hours per week.

59. Defendant MAD EVENT did not pay plaintiff Stirone an overtime premium for each hour She worked over 40 hours per week in violation of N.Y. Lab. Law §§ 190 et seq. and 650 et seq. and 12 N.Y.C.C.R. § 137-1.3.

60. Defendants' failure to pay overtime compensation was willful within the meaning of N.Y. Lab. Law §§ 663(1) and 198 (1-a).

61. Plaintiff Stirone is entitled to recover from defendants her unpaid overtime compensation and an equal amount in the form of liquidated damages.

**FIFTH CLAIM FOR RELIEF – FAILURE TO PAY WAGES WITHIN REQUIRED TIME PERIOD**

62. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 61 of this complaint as if fully set forth herein.

63. By failing to pay plaintiff Stirone the wages she was owed, defendants violated N.Y. Lab. Law §§ 191.

64. Defendants' failure to make timely wage payments compensation was willful within the meaning of N.Y. Lab. Law §§ 663 and 198(1-a).

65. Plaintiff Stirone is entitled to recover compensatory damages from defendants and an equal amount in the form of liquidated damages.

### SIXTH CLAIM FOR RELIEF – RECORD KEEPING VIOLATIONS

66. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 65 of this complaint as if fully set forth herein.

67. MAD Event failed to make, keep and preserve accurate records with respect to plaintiff Stirone, including hours worked each workday, and total hours worked each week, as required by the New York Labor Laws and its supporting regulations.

68. MAD Event failed to provide plaintiff Stirone with a written notice of rate of pay as required by N.Y. Lab. Law §§ 195.

69. Defendants' failure to pay overtime compensation was willful within the meaning of N.Y. Lab. Law §§ 663(1) and 198 (1-a).

70. Plaintiff Stirone is entitled to recover statutory damages from defendants.

### SEVENTH CLAIM FOR RELIEF – BREACH OF CONTRACT

71. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 70 of this complaint as if fully set forth herein.

72. The parties agreed that they would work together and create an enterprise to promote and operate cheerleading and dance competitions in the New York metropolitan areas.

73. Plaintiff Stirone was to provide her creative skills, connections and knowledge of the industry and would share in the proceeds of the events. Plaintiff was also required to invest $6000.00 into the business.

74. Defendants were to provide the infrastructure, some capital and access to the facilities.

75. The parties were to share the profits from the venture.

76. Plaintiff Stirone has fulfilled all of her obligations under the parties' agreement.

77. Defendants have breached the agreement by terminating plaintiff Stirone's employment, misappropriating her ideas and trade secrets and refusing to pay her.

78. Plaintiff Stirone was damaged by defendants' breach of contract in an amount to be proven at trial, but in excess of $75,000.00.

**EIGHTH CLAIM FOR RELIEF – UNJUST ENRICHMENT/QUASI-CONTRACT**

79. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 78 of this complaint as if fully set forth herein.

80. Plaintiff Stirone shared her knowledge of the industry and devoted her time to defendants with the understanding that defendants would not misappropriate her knowledge and that she would be paid for her time and become an integral part of the enterprise.

81. Defendants' accepted plaintiff's time, money, knowledge and trade secrets and understood that plaintiff expected payment for her contribution.

82. Defendants used plaintiff's time, money, knowledge and trade secrets to develop and cheerleading and dance competition company that it continues to operate and profit from today.

83. Plaintiff demanded that defendants pay her for her time, money, knowledge and trade secrets, but defendants refused.

84. Defendants have been unjustly enriched by their refusal to pay plaintiff for her time, money, knowledge and trade secrets.

## NINTH CLAIM FOR RELIEF - CONVERSION

85. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 84 of this complaint as if fully set forth herein.

86. Defendants are in possession of funds and property to which plaintiff has a superior right of possession.

87. Defendants have unjustly enriched themselves by withholding wages owed to plaintiff Stirone and by failing to adequately compensate her for the services that she provided.

88. Defendants have unjustly enriched themselves by appropriating the valuable concepts, ideas and property developed by plaintiff Stirone for operating a cheerleading and dance competition company.

89. The circumstances between plaintiff Stirone and defendants are such that equity and good conscience require defendant pay for the services provided and the concepts and ideas they misappropriated.

90. Plaintiff Stirone is entitled to compensatory damages from defendants in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF – THEFT OF TRADE SECRETS

91. Plaintiff Stirone repeats and realleges each and every allegation contained in paragraphs 1 through 90 of this complaint as if fully set forth herein.

92. Plaintiff Stirone's knowledge of the cheerleading and dance competition industry was developed through her years of working in in the field at great cost to her. Plaintiff's knowledge, which she used in her business, gave her an advantage over competitors and others seeking to enter the field.

93. Plaintiff Stirone kept her knowledge confidential and refused to share it with others.

94. Plaintiff shared her trade secrets with defendants only upon their promise to compensate her and develop a business with her using plaintiff Stirone's trade secrets.

95. After plaintiff Stirone shared all of her trade secrets with defendants and helped them develop the business, defendants fired plaintiff Stirone, refused to return her trade secrets, refused to pay her for her trade secrets and continue to use plaintiff Stirone's trade secrets in the operation of their business.

96. As a direct and proximate result of defendants' theft of her trade secrets, plaintiff was damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Stirone respectfully requests that this Court enter a judgment:

a. Awarding monetary damages to plaintiff Stirone so as to make her whole for all earnings and other benefits she would have received but for defendants' unlawful conduct, including but not limited to back and front pay, unpaid wages and lost benefits;

b. Awarding plaintiff Stirone liquidated damages for minimum wage and overtime violations and statutory damages for record keeping violations;

c. Awarding plaintiff Stirone compensatory damages on her common law claims in an amount to be proven at trial;

d. Awarding plaintiff Stirone interest, costs and reasonable attorney's fees as provided by statute;

e. Awarding plaintiff Stirone punitive damages; and

f. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all of the issues.

Dated: Montclair, New Jersey    **THE LAW OFFICE OF JOHN F. OLSEN, LLC**
       February 7, 2017

By:  */s/ John F. Olsen*
John F. Olsen
Attorney for Plaintiff Michele Stirone

33 Plymouth Street, Suite 108
Montclair, New Jersey 07042
t. (973) 679-4001
f. (973) 679-7335